The Honorable Sue Madison State Senator
573 Rock Cliff Road Fayetteville, Arkansas 72701-3809
Dear Senator Madison:
You have requested a follow-up opinion on Opinion No. 2010-169, which addressed a question about the Arkansas Freedom of Information Act (FOIA). You ask the following six questions, some of which I have paraphrased:
 1. Pursuant to the FOIA, must the custodian of records charge a fee for the actual cost of reproduction of the record?
 2. May the custodian charge a fee that is less than the actual cost of reproduction?
 3. For purposes of the fee, may the custodian treat FOIA requestors differently based solely on whether the requestor lives in Washington County?
 4. May the custodian waive or reduce fees only if he or she determines that the request is for non-commercial purposes and it is in the public interest to do so?
 5. May the custodian simply provide the records to the public as a public service and not necessarily under the FOIA?
 6. If the answer to Question 5 is "yes," may the custodian charge people who request the documents differently based solely on whether the requestor lives in Washington County? *Page 2 
RESPONSE
For purposes of your first four questions, and unless otherwise stated, I will assume (a) that a request for non-exempt, public records has been properly made under the FOIA and (b) that the request is not being fulfilled pursuant to A.C.A. § 25-19-109.
In light of these assumptions, the short answers to your questions are as follows: [Q1] no; [Q2] yes, with certain caveats; [Q3] probably not; [Q4] no; [QQ5 6] the answers depend on the way your questions are interpreted.
DISCUSSION Question 1: Pursuant to the FOIA, must the custodian ofrecords charge a fee for the actual cost of reproduction of therecord?
No. In my opinion, the FOIA does not require custodians to always charge. While this might not be immediately apparent from the face of the FOIA, it reasonably follows from the Act's legislative history. The FOIA probably does, however, contemplate that custodians will ordinarily charge. But this is probably the consequence of the common practice at the time when the fee provisions were adopted.
As recently as 2001, the FOIA contained no guidance on how much custodians could charge for copies, or even whether they had authority to charge at all. In that year, however, the General Assembly amended the FOIA when it adopted recommendations by the Electronic Records Study Commission. These amendments, which are contained in subsection 25-19-105(d), state:
 (d)(2)(A) Upon request and payment of a fee as provided in subdivision (d)(3) of this section, the custodian shall furnish copies of public records if the custodian has the necessary duplicating equipment.
 * * * (3)(A)(i) [A]ny fee for copies shall not exceed the actual costs of reproduction, including the costs of the medium of reproduction, *Page 3 
supplies, equipment, and maintenance, but not including existing agency personnel time associated with searching for, retrieving, reviewing, or copying the records.
 (ii) The custodian may also charge the actual costs of mailing or transmitting the record by facsimile or other electronic means.
 (iii) If the estimated fee exceeds twenty-five dollars ($25.00), the custodian may require the requester to pay that fee in advance.
 (iv) Copies may be furnished without charge or at a reduced charge if the custodian determines that the records have been requested primarily for noncommercial purposes and that waiver or reduction of the fee is in the public interest.
This entire subsection was originally drafted by the Commission in 2000.[1] The Commission, which was convened to bring the FOIA into the electronic age, proposed a complete set of amendments for the General Assembly to consider incorporating into the FOIA. The foregoing subsection, which was accompanied by commentary explaining the Commission's intent and rationale, was adopted, in toto, by the General Assembly. Therefore, the Commission's commentary illumines the provision's meaning.
Even a cursory look at that commentary makes clear that the Commission did not believe its proposal would require
custodians to charge for copies. In portions of its commentary, the Commission explains its guiding principle behind the fee provisions by noting that custodians "may elect to provide access at reduced or no charge, and should do so whenever appropriate."[2] Further, when commenting on the foregoing provision, the Commission indicates that, far from imposing a new rule that custodians must always charge, the Commission simply intended to codify the then-current practice: "[Subsection-105(d)(2)(A)] simply expresses in *Page 4 
the [FOIA] the frequent practice of responding to FOIA requests by providing copies of records with a fee for duplicating cost."[3]
Notwithstanding the apparent absence of intent to mandate fees, the answer to your question may be somewhat complicated by subsection 25-19-105(d)(3)(A)(iv), which states: "Copies may be furnished without charge or at a reduced charge if the custodian determines that the records have been requested primarily for noncommercial purposes and that waiver or reduction of the fee is in the public interest." At first glance, one might read this as requiring custodians to charge. But such a reading is negated by the legislative history explained above.
Instead, this subsection may be read, in my opinion, simply as an example of a clear instance in which custodians can waive or reduce fees. Accordingly, I do not read it to suggest that there are no other circumstances in which a fee may be waived or reduced. Such a reading would, as explained above, implicitly require custodians to charge, which is contrary to the clear legislative intent.
I recognize that custodians may encounter some difficulty in identifying potential limits on deciding whether or how much to charge. The fact that the FOIA is not entirely clear on that score may suggest the need for legislative clarification. Custodians would be wise to consult local counsel when making these decisions with an eye toward establishing a usual practice. Finally, as I explain in response to your third question, constitutional considerations may come into play when deciding whether or how much to charge.
Question 2: May the custodian charge a fee that is less thanthe actual cost of reproduction?
As noted in the foregoing discussion, the answer is generally "yes." But particular circumstances may require further analysis. For example, the particular facts behind Opinion 2010-169 involved a plan by the Washington County Assessor to establish an online database for access to certain public records. When charging for access to the site, the Assessor proposed to distinguish between county residents and non-county residents. I suggested several problems with such a proposal and concluded that the plan was probably inconsistent with the FOIA. I will note, additionally, that all official actions of Washington County officials are *Page 5 
governed by the principles of fairness and equality contained in the U.S. Constitution, which are embodied in, inter alia, the Equal Protection clause of the Fourteenth Amendment.
Your question asks whether a county official can treat FOIA requestors differently based solely on where the requestors live. InLee v. Minor, [4] the United States Court of Appeals for the Third Circuit was asked a similar question. The Lee court struck down a provision in Delaware's FOIA that discriminated among requesters based on their residency. The court held that, in the context of open-records laws, discriminating based on residency violates the federal constitution's Equal Protection and Privileges and Immunities clauses. Given the Lee court's extensive analysis of a government action that treats FOIA requestors differently based solely on residence, a court would likely invalidate the Washington County Assessor's plan as violating the extrinsic limitations contained in the U.S. Constitution.
Question 3: For purposes of the fee, may the custodiantreat FOIA requestors differently based solely on whether therequestor lives in Washington County?
See my response to your second question.
Question 4: Are custodians permitted to waive or reduce feesonly if they determine (a) that the request is fornon-commercial purposes and (b) that it is in the public interest towaive or reduce the fee?
See my response to your first question. As stated there, I do not read A.C.A. § 25-19-105(d)(3)(A)(iv) as prescribing the only circumstances in which fees may be waived or reduced. Accordingly, the answer to this question, as worded, is "no."
Question 5: May the custodian simply provide the records tothe public as a public service and not necessarily under theFOIA?
If you are asking whether custodians can release non-exempt, public records on their own and not in response to any specific requester, then the answer is clearly "yes." The FOIA does not limit the kinds or amounts of non-exempt, public records that custodians may freely disclose. *Page 6 
But if you are asking whether the custodian can treat a request for public records as if it were not governed by the FOIA, the answer is "no." There is no requirement that an FOIA requester specifically refer to the FOIA in order to employ it, though it is obviously advisable to do so. In my opinion, if a request is made for public records, the custodian must operate under the FOIA.
Question 6: If the answer to Question 5 is "yes," may thecustodian charge people who request the documents differently basedsolely on whether the requestor lives in Washington County?
This question is a little confusing because the phrase "as a public service," as used in Question 5, typically means "for free." Under that fairly common usage, there would be no occasion to charge differently based on one's residence. Nevertheless, if the custodian charges a fee, then treating requestors differently based on residence would likely violate the U.S. Constitution, as explained in response to Question 3.
Assistant Attorney General Ryan Owsley prepared this opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Report of the Electronic Records StudyCommission Recommendations for Amendments to the Arkansas Freedomof Information Act, December 15, 2000.
[2] Id., p. 12.
[3] Id., p. 28.
[4] 458 F.3d 194 (3rd Cir. 2006).
 *Page 1